UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-2989-MDL-ALTONAGA/Torres

**CLASS ACTION**

**IN RE: JANUARY 2021 SHORT SQUEEZE TRADING LITIGATION**

**COMPLAINT**

CLASS ACTION COMPLAINT

This Document Relates to: All Actions Involving Federal Securities Laws

Michael Oberlin ("Plaintiff) brings this action individually and on behalf of all others similarly situated and alleges as follows, on information and belief, other than those allegations pertaining directly to Plaintiff:

## NATURE OF THE CASE

1. Plaintiff asserts this nationwide class action on behalf of all customers with brokerage accounts at TD Ameritrade, Inc. ("TD" or Defendant) who attempted to sell AMC securities through TD's trading platform and were prohibited from doing so or were delayed in doing so on January 28, 2021, and who sustained damages as a result.

2. Plaintiff brings this action for breaches of contract and implied covenantof good faith and fair dealing.

3. The contracts and covenant are governed by Nebraska law.

4. TD blocked Plaintiff and other TD brokerage account holders from trading stock in AMC Entertainment Holding, Inc., a company whose securities are traded on the New York Stock Exchange under the symbol ("AMC"). TD did so deliberately during a "short squeeze" market condition that was fully known or knowable to TD.

5. A "short squeeze" occurs when persons holding positions requiring that they deliver AMC shares (or shares of other companies) they do not have must find shares to fulfill obligations, but the shares cannot be found in the markets because they are withheld from trade by owners or market-impacting brokers who prevent access to the market by investors seeking shares.

6. AMC is the nation's largest movie-theater chain. AMC's financial performance suffered due to the COVID-19 pandemic's effecton customer attendance at AMC theaters.

AMC's stock price began to increase substantially in January 2021.

7. TD is an online brokerage firm used by many investors and is commission free. TD markets itself as providing its customers access to a spectrum of resources including real time quotes, charts, third-party analyst reports and the most advanced trading platforms.

8. TD purposely, knowingly and willfully prevented plaintiff and the other members of the putative class from trading in AMC stock from its trading platform in the midst of the short squeeze, thereby manipulating the open market to artificially lower the price.

9. TD's actions harmed plaintiff and the proposed class.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class Members are citizens of states that are diverse from Defendant's domicile; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this class action occurred in this District. Defendant transacts business in this District. Venue is also proper in this Court pursuant to 15 U.S.C. § 78aa.

## PARTIES

12. Plaintiff Michael Oberlin is a resident of the State of Florida.

13. Defendant TD is a Delaware corporation with its principal place of business in Omaha, Nebraska. TD is a broker that offers an electronic trading platform for the trade of financial assets. TD provides investing and trading services for millions of client accounts that

total more than $1 trillion in assets, and custodial services for more than 6,000 independent registered investment advisors. TD Ameritrade is a member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), a government-authorized not-for-profit organization that oversees U.S. broker-dealers. TD is also a member of the Securities Investor Protection Corporation ("SIPC"). SIPC is a federally mandated non-profit company that collects cash and other assets of financially distressed brokerage firms for the benefit of their customers. TD is registered with the U.S. Securities and Exchange Commission ("SEC"). TD is a subsidiary of The Charles Schwab Corporation, which acquired TD Ameritrade effective October 2020.

14. In late 2020, stocks for various companies began to fluctuate greatly in market price. This included AMC stock. AMC stock experienced an extreme downturn in price that corresponded with a decline in use of theaters by moviegoers during the ongoing global pandemic. This price trend reversed in early 2021 when AMC's stock price began to dramatically rise.

15. In January of 2021, AMC stock rose steadily, gaining nearly 50% in the first three weeks of the year

16. On Monday, January 25, 2021, AMC announced that it had raised $917 million in capital. The market reacted quickly. AMC stock gained 26% on January 25, 2021, and another 12% the next day.

17. After it was publicly known and discussed in investment circles, which occurred before January 26, 2021 that AMC was one of Wall Street's most shorted stocks (i.e., sold by persons without shares at the time of sale), investors began to invest heavily in AMC and the stock price rose 360% overnight to a value of $20.36 per share. Within an hour into the trading day on January 27, 2021, more than 500 million shares of AMC had changed hands – compared

to a 30-day average volume of 86 million shares. By the end of the trading day on January 27, 2021, more than 1.1 billion shares of AMC had changed hands.

18. On January 27, 2021, Plaintiff purchased and sold shares of AMC through his TD self-directed brokerage account and in his IRA account. At the end of the day, Plaintiff held 50,000 shares in his brokerage account and 17,000 shares in his IRA account.

19. On January 28, 2021, once the market opened, the Plaintiff submitted a sell order in his brokerage account for 50,000 shares of AMC stock. The opening price of AMC on January 28, 2021 was $11.98.

20. As a result of TD's failure to execute Plaintiff's initial sell orders, Plaintiff's orders were not filled as the requested "market" orders, but sat at TD unfilled as the market price of AMC rapidly spiraled downward.

21. Eventually, Plaintiff's sell order was filled at viritually the same second. Plaintiff sold 1,154 shares at $9.00 on January 28, 2021 (10:31:21AM) and 48,846 shares at $8.01 on January 21, 2021 (10:31:21AM).  Moreover, despite being submitted as one order, TD executed the sales in two transactions and executed the sales at a large price differential.

22. Other traders have reported that, on the morning of January 28, 2021, they attempted to sell shares of AMC shares on the TD platform and found that the platform was unavailable to them. A spokesperson for TD made a public announcement for TD about its intentional refusal to post offerings on its trading platform on January 28, 2021. TD announced, "In the interest of mitigating risk for our company and clients, we have put in place several restrictions on some transactions in $GME [GameStop], $AMC and other securities."[1]

---

[1] GameStop and AMC Trading Restricted by TD Ameritrade, Schwab, Robinhood Others, MSN.COM (Jan. 28, 2021), available at: https://www.msn.com/en-us/money/topstocks/gamestop-amctrading-

23. Regulators responded to TD's alarming public statements immediately. The Securities Exchange Commission publicly stated that it would "closely review actions taken by regulated entities [such as TD] that may disadvantage investors or otherwise unduly inhibit their ability to trade certain securities" and "act to protect retail investors when the facts demonstrate abusive or manipulative trading activity that is prohibited by the federal securities laws."[2]

24. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and(b)(3) on behalf of a proposed Class defined as:

> All TD Ameritrade self-directed brokerage account customers who attemptedto sell AMC securities through TD Ameritrade and were prohibited from doingso and/or whose orders to sell were delayed on January 28, 2021 resulting in asale at a lower price in any of the fifty States, the District of Columbia, PuertoRico, and all other United States territories and possessions.

25. Excluded from the Class are: (a) TD, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (b) Defendant's Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude  themselves from the Class.

26. Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as

---

is-now-being-restricted-at-td-ameritrade-schwab/ar-BB1d9dmv.
[2] Securities and Exchange Commission Public Statement, Statement of Acting Chair Lee and Commissioners Pierce, Roisman and Crenshaw Regarding Recent Market Volatility, (January 29, 2021), available at http://www.sec.gov/news/public-statement/joint-statement-market volatility-2021-01-29.

would be used to prove those elements in individual actions alleging the same claims. Class members are also readily ascertainable from the records of TD.

27. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The precise number of members of the proposed class is unknown to Plaintiff at this time, but, based on information and belief and publicly available reports, Class Members number at the very least in the tens of thousands of people. Therefore, the Class is so numerous that joinder of all members would be impracticable. All Class Members may be notified of the pendency of this action.

28. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including: Whether TD knowingly failed to provide the financial services that wererequired to process reasonable customer demand in high-volume trading time periods,including trading securities that are available on every other competitive platform.

    a.    Whether TD was in breach of its legal, regulatory, and licensing requirementsby failing to provide adequate access to financial services.

    b.    Whether TD violated FINRA Rule 5310, among other FINRA rules, state rules,and federal regulations.

    c.    Whether TD was in breach of its brokerage Agreement contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to providefinancial services.

    d.    Whether Plaintiff and other Class Members have been damaged and, if so, the extent of such damages; and

    e.    Whether Plaintiff and other Class Members are entitled to

equitable relief, including but not limited to, restitution and injunctive relief.

29. TD engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

30. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of other Class Members because, among other things, Plaintiff and the other Class Members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on his own behalf and on the behalf of other Class Members, and no defense is available to TD that is unique to Plaintiff.

31. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of other Class Members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and his counsel

32. **Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment

suffered individually by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for the Class Members to individually seek redress for Defendant's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court.

## CLAIM I
### (Breach of Contract)

33. Plaintiff incorporates all allegations above, here.

34. Plaintiff and members of the class entered into an agreement with TD to provide brokerage services through a self-directed brokerage account ("Agreement").

35. Under the Agreement, customers are "responsible for all purchase and sell orders" "based on [their] own investment decisions." TD may only "refuse [an] order, or delay placing [an] order, if [TD] determine[s] that an order requires clarification from [customer.]"

36. The Agreement states that TD is a member of the FINRA, a self-regulatory organization. It defines "Applicable Rules" to include "rules of any self-regulatory organization."

37. FINRA Rule 5310.01 regarding "Best Execution and Interpositioning" requires that brokers "must make every effort to execute a marketable customer order that it receives promptly and fully."

38. TD delayed and/or failed to execute orders to sell AMC stock placed by Plaintiff and members of the class on January 28, 2021

39. TD breached the Agreement by delaying and/or rejecting orders to sell AMC

8

stock on January 28, 2021.

40.  TD's failure to process orders to sell AMC stock on January 28, 2021 in breach of the Agreement caused harm, losses and damages to Plaintiff and members of the class.

## CLAIM II

### (Breach of Implied Convenant of Good Faith and Fair Dealing)

41.  Plaintiff incorporates all allegations above, here.

42.  Plaintiff and the Class entered into the Agreement with Defendant TD to open a TD trading account. They agreed to TD's terms and conditions in order to use TD's website and trading platform.

43.  Plaintiff and the Class fulfilled their obligations under these contracts by adhering to the agreed upon terms and by using TD's trading services.

44.  TD was obligated to provide the trading services required under those contracts at all times, including but not limited to trades of AMC stock.

45.  When initially entering the Agreement, Plaintiff and the Class could and did trade AMC stock.

46.  TD unfairly interfered with the rights of Plaintiff and the Class to receive the benefits of the Agreement by, among other things, (a) failing to provide services necessary to timely execute a trade on the stock market; (b) failing to allow its users to trade certain securities at all, including AMC stock; (c) failing to inform its users in a timely manner of the drastic changes in trading abilities; and (d) prohibiting Plaintiff and the Class from trading in AMC stock for its own pecuniary interest and not disclosing that interest to Plaintiff and the Class.

47. TD acted in bad faith by placing its interests over its contractual duties to its users like and including Plaintiff.

48. TD's conduct has caused Plaintiff and the Class harm, losses, and damages.

49. These losses reflect damages to Plaintiffs and the Class in an amount to be determined at trial.

## REQUESTS FOR RELIEF

On the foregoing basis, Plaintiffs, individually and on behalf of the Class Members, respectfully request that the Court enter Orders and Judgment that:

   a. Certify the Class under Fed. R. Civ. P. 23(a) and 23(b)(3), as requested.

   b. Appoint Plaintiff as Class Representative and his lawyers as Class Counsel.

   c. Award Plaintiff and the other Class Members damages.

   d. Award Plaintiff and the Class pre-judgment and post-judgment interest on all amounts awarded to the extent permitted by law.

   e. Award Plaintiff and the Class reasonable attorneys' fees, costs, and expenses.

   f. Grant relief as the law requires and the Court and Jury decide are appropriate.

## JURY DEMAND

Pursuant to U. S. Const Amend VII and Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all triable.

Dated April 26, 2021

                                        **SAFIRSTEIN METCALF LLP**

                                        By:  /s/*Peter Safirstein*
                                             Peter Safirstein
                                             Elizabeth S. Metcalf
                                          1345 Avenue of the Americas

2nd Floor
New York, NY  10105
Tel: (212) 201-5845
psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com
*Pro Hac Vice Admission requested*

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
135 Chestnut Ridge Road
Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
jbrody@kgglaw.com
*Pro Hac Vice Admission requested*

**PRESSLY LAW GROUP PLLC**
George Pressly, Esq.
155 North Wacker Drive
Suite 4250
Chicago, IL 60606
(603) 320-7030
gpressly@presslylaw.com

*Attorneys for Plaintiff*